IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Eugene P. Jones,<br>　　Plaintiff, | )<br>)<br>) |
| v. | )     1:12cv352 (AJT/IDD) |
| | ) |
| Officer Stamper,<br>　　Defendant. | )<br>)<br>) |

MEMORANDUM OPINION

Eugene P. Jones, a Virginia inmate acting pro se, filed this action pursuant to 42 U.S.C. § 1983, seeking monetary damages for an alleged application of excessive force during his pretrial detention at the Riverside Regional Jail ("RRJ"). The matter is now before the Court on defendant Officer John Stamper's Motion for Summary Judgment, which was filed along with a supporting brief and exhibits on April 18, 2013. Dkt. 37-38. Plaintiff was provided with the notice required by Local Rule 7(k) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Dkt. 40, and he filed a Brief ... in Opposition to Defendant's Motion on May 8, 2013. Dkt. 44. Defendant subsequently filed a Rebuttal Brief and was granted leave to file a copy of the surveillance video of the incident in question. Dkt. 43, 45. On May 29, 2013, plaintiff also filed a Rebuttal Brief. Dkt. 48. Accordingly, this matter is now ripe for disposition. After careful consideration of all of the foregoing submissions, defendant's Motion for Summary Judgment will be granted, and summary final judgment will be entered in his favor.

I. Factual Background

The following material facts are uncontested. RRJ policy requires that all inmates are to

be pat searched before departing their housing pods and again when they return to the pods. Minton Decl. ¶ 3. A pat down search begins at the top of the inmate's head and covers the entire body, concluding with the inmate's legs. Id. ¶ 4. Specifically relevant here is that an officer is to search a male inmate's genital area by "reaching all the way between the inmate's legs touching the top of the groin area and sweeping down between the legs and up to the buttocks area." Id.

On January 31, 2012 at around 4:34 p.m., during his pretrial detention, plaintiff was returned from the medical department to his housing pod at RRJ after receiving an insulin shot. Pursuant to the foregoing policy, Officer Stamper began a pat down search by ordering plaintiff to face the wall, place his hands above his head on the wall, and spread his legs. Jones Decl. ¶ 5. Stamper patted plaintiff's upper extremities, upper body, stomach and waist band without incident. Id. ¶ 6. However, when Stamper bent over and reached between plaintiff's legs to search the genital area, plaintiff "turned quickly and aggressively away from the wall" to face Stamper. Id. Stamper perceived this as a hostile action, assumed a defensive stance, and ordered plaintiff to turn back towards the wall. Id. Plaintiff cursed at Stamper and Stamper repeated the order to plaintiff to turn back toward the wall with his hands placed on the wall for completion of the search. This time, plaintiff complied. Id. Stamper then began to search plaintiff's left leg, and when his hand passed the groin area plaintiff again turned towards Stamper in a hostile manner. Id. ¶ 7. Stamper felt threatened and placed plaintiff in a "T-3 hold" to gain control over him. Id. ¶¶ 7-8. The hold, which is taught and practiced regularly as part of "defensive tactics training," consists of placing the inmate on his stomach with his arm extended upward behind him. The officer then kneels with his "outside" knee on the ground next to the inmate's shoulder or torso and the "inside" knee on the inmate's third thoracic vertebra. This allows handcuffs to be

applied to the inmate's extended arm. Id. ¶ 8. Stamper attests that he performed this hold on plaintiff using only the amount of force necessary to protect himself and to make plaintiff comply with his commands so that handcuffs could be applied. Id. ¶ 9. Contrary to allegations in the complaint, Stamper never placed his hands around plaintiff's neck or choked him. Id.

After this incident plaintiff was escorted from the pod and taken to the medical department, where an abrasion on his left knee was cleaned and dressed. Id. ¶ 11. Plaintiff was able to walk without assistance. Id. He was given pain medication and an ice pack and was returned to his housing pod. Id. As a result of the incident plaintiff was charged with violating jail procedures by creating a security disturbance, and for this infraction he was placed on lockdown for five (5) days and lost two (2) weeks' visitation privileges. Id. ¶ 10.

On February 7, 2012, plaintiff was referred for an x-ray of his left knee due to continued complaints of pain. A report prepared by Dynamic Mobile Imaging in Richmond states that "[t]he left knee joint is in alignment, but there is a narrowing of the joint space due to slight degenerative changes. There is slight degenerative spurring involving tibial spine and femoral condyles. No fracture or dislocation is seen." The physician's impression was noted as "slight osteoarthritis of the left knee." Def. Ex. D.

In response to defendants' summary judgment motion, plaintiff filed a Brief in Support in Opposition to the Defendants Motion for Summary Judgment. Dkt. 44. This document, which is neither sworn nor notarized, consists largely of a memorandum of law, although plaintiff does take issue with certain of defendant's factual assertions.[1] However, plaintiff's pleading is

---

[1] Specifically, plaintiff states that he did not turn away from the wall in an aggressive manner during the pat-down search, but rather reacted when Officer Stamper hit him "very hard" in his testicles. Id. at § 6. He also states that Stamper while restraining plaintiff "put [pressure]

3

insufficient to oppose a motion for summary judgment, as it is unsworn and does not subject the author to the penalty of perjury for any misstatements. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Accordingly, plaintiff's unsworn statements cannot be considered here.[2]

### III. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on

---

around plaintiff's neck, with his hands [until] he was at the point of passing out," id. at § 9, and that during the incident plaintiff's forehead was scraped against the wall and his left shin-bone was made to "stick out" below the knee. Id. He contends that the diagnosis of osteoarthritis in the knee was "wrong" and was "given ... as a cover-up for Officer Stamper['s] wrong doing." Id.

[2]Moreover, even if plaintiff's "brief" had been sworn, the nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This is true even where the nonmoving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings; a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994). Here, the factual allegations in plaintiff's "brief" amount to nothing more than a conclusory recapitulation of the complaint, without additional supporting evidence. Thus, even had it been sworn, plaintiff's pleading would still be insufficient to defeat defendant's summary judgment motion. Doyle v. Sentry Ins., 877 F.Supp.1002, 1005 (E.D. Va. 1995) (Merhige, J.) (to defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations or denials contained in the pleadings.")

the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Because plaintiff was a pretrial detainee at RRJ when the incident in question occurred, his claim arises under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-36 (1979); Ingraham v. Wright, 430 U.S. 651, 671-72 (1977). Only

governmental conduct that "shocks the conscience" is actionable as a violation of the Fourteenth Amendment. Young v. City of Mount Rainier, 238 F.3d 567, 574 (4th Cir. 2001). The due process rights of a pretrial detainee are "at least as great as the Eight Amendment protections available to a convicted prisoner." City of Revere v. Mass. Gen'l Hosp., 463 U.S. 239, 244 (1983).

"Due process requires that a pretrial detainee not be punished." Wolfish, 441 U.S. at 535. Thus, to demonstrate a due process violation, a pretrial detainee must show that the challenged conduct was intended as punishment. Cooper v. Dyke, 814 F.2d 941, 948-49 (4th Cir. 1987). "Punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and substantial risks of harm." Westmoreland v. Brown, 883 F.Supp. 67, 72 (E.D. Va. 1995). The standard to determine whether the use of force against a pretrial detainee violates due process "is whether [the defendant's actions] amount to punishment of the detainee," Wolfish, 441 U.S. at 539, and whether those actions "inflicted unnecessary and wanton pain and suffering" on the detainee. Whitley v. Albers, 475 U.S. 312, 320 (1986). To survive a properly-supported motion for summary judgment, a pretrial detainee must demonstrate "not only that the defendant was deliberately indifferent to the substantial risk of harm [posed by the challenged action], but also that his deliberate indifference caused a physical or emotional injury." Id. at 76. A court in making such a determination looks to (1) the objective nature of the force used, (2) the resulting harm, and (3) the officer's subjective intent. Hudson v. McMillian, 503 U.S. 1, 7 (1992). Thus, the inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and ... the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective

component).'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). To satisfy the objective component, the plaintiff must demonstrate that the "nature" or amount of force employed "was nontrivial." Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010). The subjective component turns on whether the inmate can demonstrate "'wantonness in the infliction of pain,'" Iko, 535 F.3d at 239 (quoting Whitley, 475 U.S. at 322), and the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Pursuant to these authorities, plaintiff has failed to establish that he was subjected to unconstitutionally excessive force by Officer Stamper.

A. Subjective Component

The facts pertaining to the "core judicial inquiry" here are uncontroverted: the incident in question occurred during a routine pat down search required by RRJ's procedure to check for contraband whenever an inmate leaves and again when he reenters his housing pod. Stamper Decl. ¶ 3; Minton Decl. ¶3. Thus, Officer Stamper's actions amounted to "a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 7. Stamper performed the search in accord with the steps required by RRJ policy, and when he searched plaintiff's genital area as required by that policy, plaintiff pushed off the wall and turned toward Stamper in an aggressive manner. Stamper Decl. ¶¶ 3-5. When Stamper ordered plaintiff to resume his original posture plaintiff cursed Stamper but complied. Id. However, when Stamper resumed the pat search of plaintiff's genital area plaintiff again turned toward Stamper and faced him in a hostile manner, and Stamper at that point detained plaintiff by taking him to the floor and gaining control by executing a hold maneuver pursuant to the training he had received. Stamper Decl. ¶¶ 7-8.

Stamper attests that he used only the minimum force necessary to restrain plaintiff, id. at 9, and the extent of injury plaintiff suffered as a result - an abrasion on his left knee - belies any suggestion that Stamper wantonly inflicted pain on plaintiff. Cf. Iko, 535 F.3d at 239. Under these circumstances, plaintiff has failed to carry his burden to show that the subjective component of a viable claim of excessive force was present.

B. Objective Component

Satisfaction of the objective component in a successful Eighth Amendment claim is less demanding relative to the subjective component. Williams, 77 F.3d at 761. Nonetheless, plaintiff here does not meet that burden. In the initial complaint and other filings in this action, plaintiff claimed that the incident at issue resulted in a bone sticking out of his knee. However, the uncontested evidence submitted by defendant disproves that allegation. Although plaintiff suffered an abrasion on the knee when he was restrained by Officer Stamper, he was able to walk without a limp or other apparent difficulty immediately after the incident occurred. Stamper Decl. at ¶¶ 11-12. The surveillance video submitted by defendant, which the Court has viewed, confirms this. Dkt. 46. In addition, defendant's exhibits demonstrate that an x-ray of plaintiff's left knee was taken on February 7, 2012, about a week after the incident under consideration, and it confirmed that there was no fracture or dislocation. Def. Ex. D. The only abnormalities noted in the knee were degenerative problems associated with the aging process, such as "slight osteoarthritis." Id. Even taken in the light more favorable to the plaintiff, the abrasion he suffered to his knee was *de minimis* and was not sufficiently serious to warrant constitutional protection. Wilkins, 130 S.Ct. at 1179.

## IV. Conclusion

Courts are mindful that "[t]he infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes or was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319. In this case, the evidence as a whole does not support a reasonable inference that defendant's motives in applying force to plaintiff were wanton or malicious, or that an unreasonable quantum of force was applied. Considering the totality of the circumstances in the light more favorable to the plaintiff, he has failed to demonstrate a genuine issue of material fact as to whether defendant's actions in dealing with his apparently hostile behavior were sufficiently egregious to violate his right to due process. Therefore, defendant Stamper's Motion for Summary Judgment will be granted, and summary final judgment will be entered in his favor. An appropriate Order shall issue.

Entered this 6th day of December 2013.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge